# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CASE NO. 3:24-CV-01087-FDW-DCK

| | |
|---|---|
| SMARTSKY NETWORKS, LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>GOGO INC.; GOGO BUSINESS )<br>AVIATION LLC; and GOGO )<br>INTERMEDIATE HOLDINGS LLC, )<br>)<br>Defendants. )<br>) | **SMARTSKY NETWORKS, LLC'S RESPONSE IN OPPOSITION TO SOLAIRUS AVIATION LLC'S MOTION TO QUASH SUBPOENA** |

SmartSky Networks, LLC responds to Solairus Aviation LLC's Motion to Quash (Doc. 85) and supporting Memorandum (Doc. 86), respectfully stating as follows:

## I. BOTTOM LINE UP FRONT

Solairus's Motion should be denied for four reasons:

- ***First***, Solairus's Motion is premature—and therefore violates this Court's Local Rules and the governing Case Management Order—because Solairus abruptly filed it without completing the good-faith and productive meet-and-confer discussions the parties were having, which SmartSky is confident the parties can resume to alleviate the concerns raised in the Motion.

- ***Second***, the Motion must be denied because Solairus did not file it in "the court for the district where compliance is required," which is in the Northern District of California, where Solairus is located.

- ***Third***, contrary to Solairus's argument, SmartSky's subpoena seeks highly relevant and discoverable information in Solairus's sole possession, as SmartSky's case centers on Gogo's abuse of monopoly power to illegally block SmartSky from the market, including through anticompetitive exclusive dealing agreements with—and misrepresentations directed to—Solairus as a Fleet Operator.

- ***Fourth***, Solairus cannot show it will experience any undue burden to comply with SmartSky's subpoena, as SmartSky substantially reduced the scope of the documents sought and has more than accommodated Solairus's confidentiality concerns (which, in any event, are best addressed through appropriate confidentiality designations, not a motion to quash).

## II. BACKGROUND

1. For months before Solairus filed its Motion, SmartSky worked in good faith with Solairus to reduce any claimed burden from the subpoena, including by agreeing to narrow its scope and through targeted ESI search terms, as Solairus's counsel requested.

2. SmartSky's efforts to work with Solairus began shortly after SmartSky served the subpoena on June 27, at which point Solairus represented that it "conducted an initial search for responsive documents, which returned approximately 275,000 unique artifacts." (Doc. 86, p. 2; SmartSky's Subpoena to Solairus, attached as **Exhibit A**).

3. On July 16, Solairus requested a 30-day extension so that counsel for Solairus and SmartSky could "work together to narrow the topics," and SmartSky readily agreed. (*See* E-mails between Solairus's counsel and SmartSky's counsel, attached as **Exhibit B**).

4. On July 23, SmartSky's counsel met virtually with Solairus's counsel, at which time Solairus's counsel stated that Solairus "will certainly welcome search terms" to help narrow the scope of potentially responsive information. Later on July 23, SmartSky's counsel e-mailed Solairus's counsel a set of proposed search terms, as well as six suggested custodians whose files would be searched with the proposed terms. (*Id.*). In that e-mail, SmartSky also "boil[ed] down the subpoena requests into" five "discrete categories of documents" (*id.*), contrary to Solairus's assertion in its Motion that after the July 23 conference, "Plaintiff did not revise the Subpoena or identify particular documents sought." (Doc. 86, p. 3).

5. As SmartSky emphasized in its July 23 e-mail to Solairus, SmartSky's proposal reflected a "suggested scope" for discovery, with no intention of subjecting Solairus to unnecessarily voluminous discovery or the production of "highly confidential information

2

regarding Solairus and its clients," as Solairus now claims. (*See* Doc. 86, pp. 2-4). As SmartSky's counsel stated:

> If an issue arises during your search ***(such as too many hits with certain search terms for certain custodians), please give us a call and we will work with you and your client to timely address it***. Moreover, to the extent that these search terms and custodians result in documents containing customer identities, please let us know and we will work with you to resolve the issue. ***We are not seeking the identities of individual customers***.

(**Exhibit B** (emphases added)).

6. On August 15, Solairus requested another extension—to September 18—to answer the subpoena, and SmartSky agreed the same day. (*Id.*).

7. On September 12, after a month of silence, Solairus's counsel e-mailed SmartSky's counsel, stating that the proposed search terms and custodians had resulted in "approximately 116,000 individual artifacts," and asking whether "it make[s] sense for you all to try to further narrow what you're seeking here." (*Id.*). SmartSky's counsel again agreed, and on September 24, sent a further revised and narrowed set of search terms to Solairus. (*Id.*). SmartSky also agreed to extend Solairus's deadline for compliance with the subpoena on several additional occasions, including on September 17, October 2, and October 7, ultimately extending the deadline to October 16. (*Id.*).

8. Despite SmartSky's repeated efforts to accommodate (and continued willingness to work with) Solairus, Solairus did not respond to the subpoena by October 16. Nor did Solairus even contact SmartSky's counsel to attempt to further narrow its scope. Instead, Solairus abruptly filed this Motion to Quash, claiming (unbeknownst to SmartSky), that "[t]he second revised set of search terms resulted in a total of approximately 12,000 unique artifacts, even after an effort to electronically 'de-duplicate' the results." (Doc. 86, p. 6).

### III. ARGUMENT

Under Fed. R. Civ. P. 45(d)(3), a motion to quash on the ground that a subpoena "subjects a person to undue burden" must be filed with "the court for the district where compliance is required." Relying solely on cases involving motions to compel—not motions to quash—Solairus argues that "[t]he party seeking to enforce a subpoena requesting documents from a non-party 'bears the burden of demonstrating that the documents sought are relevant.'" (Doc. 86, pp. 7, 10). But on a motion to quash, the "***party seeking to quash a subpoena bears a heavy burden*** to show compliance with the subpoena would be unreasonable and oppressive." *Joiner v. Choicepoint Servs., Inc.*, 2006 WL 2669370, at *4 (W.D.N.C. Sept. 15, 2006) (quotation marks omitted) (emphasis added).

Solairus has failed to meet this "heavy burden" for four reasons. ***First***, Solairus's Motion is premature, as it abruptly ended the good-faith and productive meet-and-confer process without allowing SmartSky the opportunity to further address the purported concerns Solairus's Motion now raises. ***Second***, Solairus's Motion is procedurally improper because Solairus filed it in the wrong forum. ***Third***, SmartSky seeks highly relevant and discoverable information from Solairus, notwithstanding Solairus's bald assertions to the contrary. ***Fourth***, Solairus cannot demonstrate it will suffer any undue burden if it produces the highly relevant discovery SmartSky seeks, especially when SmartSky has already worked with Solairus to eliminate its claimed burden.

**A. Solairus's Motion violates this Court's Local Rules and the CMO because further meet-and-confer discussions would alleviate Solairus's concerns.**

The Court should deny Solairus's Motion as premature and allow the parties to continue the good-faith but unfinished meet-and-confer discussions they were having—which Solairus suddenly abandoned in favor of its Motion to Quash. As Solairus acknowledges (Doc. 86 p. 4), LCvR 7.1(b) required Solairus to demonstrate it met and conferred with SmartSky in good faith

4

before filing its Motion, and LCvR 7.1(b) authorizes summary denial where that showing is not made. Similarly, Paragraph 1(i) of the CMO (Doc. 42) barred Solairus from filing the Motion before first scheduling an informal telephonic conference with the Court within fourteen days of the dispute arising.

Solairus neither scheduled the required telephone conference nor conferred in good faith with SmartSky before filing its Motion. Since SmartSky served its subpoena, it has worked with Solairus to reduce burden and breadth concerns Solairus has raised. Through those discussions, SmartSky has already achieved a 95% reduction in the universe of potentially responsive discovery that Solairus would then review for production. With additional good-faith discussions, SmartSky is confident it could have alleviated the burden and breadth concerns Solairus now raises. By filing this Motion before SmartSky could do so, Solairus failed to attempt in good faith to resolve its areas of disagreement. Thus, Solairus violated LCvR 7.1(b) and Paragraph 1(i) of the CMO, and this Motion must therefore be summarily denied.

  **B.**  **The Motion to Quash must be denied because "the court for the district where compliance is required" is in California, where Solairus is located.**

"[T]his Court must deny the [M]otion due to its 'fatal procedural shortcomings'"—as contrary to Rule 45(d)(3), Solairus did not file it in "the court for the district where compliance is required." *Hux v. Neutrogena Corp.*, 2024 WL 1605392, at *1 (W.D.N.C. Mar. 25, 2024) (Keesler, J.). Here, that court is in the Northern District of California, where Solairus's primary place of business is located. (Doc. 86-1, p. 1 (identifying Solairus's address in Petaluma, California); Solairus Aviation LLC Statement of Information to California Secretary of State (July 16, 2025), attached as **Exhibit C** (identifying principal address in Petaluma, California, in Sonoma

5

County); *see* Jurisdiction Map, U.S. District Court, Northern District of California, https://cand.uscourts.gov/about-court/jurisdiction-map (last visited Oct. 29, 2025)).[1]

As with many other procedurally improper motions to quash, Solairus's Motion must be denied on this ground alone. *Hux*, 2024 WL 1605392, at *1 (denying motion to quash that was filed where action was pending, not where compliance was required); *Vargas v. DiPilato*, 2025 WL 2080508, at *1 (S.D.N.Y. July 24, 2025) (same); *Greater Chautauqua Fed. Credit Union v. Quattrone*, 2024 WL 497521, at *1 (S.D.N.Y. Jan. 3, 2024) (same); *Gardner v. Cape Cod Healthcare, Inc.*, 344 F.R.D. 127, 131 (D. Mass. 2023) (same).[2]

### C. Contrary to Solairus's argument, SmartSky's subpoena seeks highly relevant and discoverable evidence.

Citing no legal or factual support, Solairus baldly asserts "Plaintiff has no basis whatsoever to believe that Solairus has any information that is either a 'smoking gun' or even marginally helpful to its case." (Doc. 86, p. 9). Solairus's generic assertions cannot alter that SmartSky's subpoena seeks information that is highly relevant and discoverable under the liberal standards set forth in the Federal Rules.

Under Rule 26, SmartSky is entitled to seek "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). As this Court has recognized, "the rules of discovery are to be accorded broad and liberal construction." *UN4 Prods., Inc. v. Does 1-10*, 2017 WL 5195884, at *2 (W.D.N.C. Nov. 9, 2017) (Keesler, J.). Thus, when moving to quash a third-party subpoena, "[t]he party

---

[1] The Court may take judicial notice of documents from the secretary of state's database. *E.g.*, *Hesed-El v. Bryson*, 2022 WL 4287975, at *10 (W.D.N.C. July 12, 2022), *adopted by* 2022 WL 3370797 (W.D.N.C. Aug. 16, 2022).

[2] The Northern District of California "may" transfer Solairus's Motion to this Court under Rule 45(f), but no such transfer has occurred here and this Court lacks the authority to do so on its own. *See Agincourt Gaming, LLC v. Zynga, Inc.*, 2014 WL 4079555, at *4 (D. Nev. Aug. 15, 2014).

6

seeking the court's protection from responding to discovery 'must make a particularized showing of why discovery should be denied, and conclusory or generalized statements fail to satisfy this burden as a matter of law.'" *Strike 3 Holdings, LLC v. Doe*, 2024 WL 4271590, at *1 (W.D.N.C. Sept. 23, 2024) (citation omitted); *Aceco Valves, LLC v. Neal*, 2024 WL 150961, at *1 (W.D. Okla. Jan. 12, 2024) ("A party seeking to quash a subpoena carries 'a particularly heavy burden'" to "submit 'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'") (citations omitted).

As detailed in its Complaint, SmartSky alleges that Gogo used its monopoly power to block SmartSky from the market through, for example: (i) a web of exclusive contracts that foreclosed SmartSky from key distribution channels and customers; (ii) predatory pricing that caused short term losses for the long-term benefit of eliminating SmartSky; and (iii) making false and misleading statements to the market, both about SmartSky and SmartSky's and Gogo's current and forthcoming products. (*See* Doc. 1 ¶¶ 63-153, 164-176). As a Fleet Operator that signed a contract with Gogo and was targeted with Gogo's false and misleading statements, Solairus is in sole possession of evidence central to these theories.

For example, in exclusive dealing cases, relevant evidence includes the purchaser's view of the effect of its contract with the monopolist, including whether the customer viewed itself as having a "meaningful choice" to buy from other firms and the extent that it was "coerced" by the monopolist. *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 285 (3rd Cir. 2012). Such evidence—which bears directly on the critical issue of the exclusionary effect of Gogo's contracts with Solairus—is available from Solairus alone, regardless of whether SmartSky can pursue evidence from Gogo (from Gogo's perspective) about its exclusionary contracting practices.

7

Solairus also possesses highly relevant information regarding the effect of Gogo's false and misleading statements about its current and forthcoming products, which Gogo directed to Solairus, as a Fleet Operator, to neutralize SmartSky as a competitive threat. (Doc. 1 ¶¶ 164-176 (detailing Gogo's misinformation campaign to illegally block competition in violation of Lanham Act)). Indeed, a Lanham Act claim involves proof that false and misleading statements were (or tended to be) deceptive and were "likely to influence a purchasing decision." *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 272 (4th Cir. 2002). SmartSky's subpoena to Solairus would yield proof of such improper deception and influence. Solairus cannot avoid that reality—let alone carry its heavy burden to quash the subpoena—with its conclusory refrain that "[t]he information already within Plaintiff's possession or reach is more than sufficient for Plaintiff to litigate its position." (Doc. 86, p. 10).

Because SmartSky's subpoena seeks highly relevant and discoverable information, Solairus's Motion should be denied.

> **D.** **Solairus has not shown that SmartSky's subpoena imposes an undue burden.**

Finally, Solairus has failed to establish how SmartSky's subpoena subjects it to any "undue burden," even though the "party seeking to quash a subpoena bears a heavy burden to show compliance…would be unreasonable and oppressive." *Joiner*, 2006 WL 2669370, at *4 (quotation marks omitted). To make that showing, the objecting party "must make a particularized showing of why discovery should be denied, and conclusory or generalized statements fail to satisfy this burden as a matter of law." *Strike 3 Holdings*, 2024 WL 4271590, at *1. This particularized showing requires the party asserting undue burden to "present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery." *Williams v. Ests., LLC*, 2020 WL 12443346, at *3 (M.D.N.C. Dec. 29, 2020) (quoting *Kinetic Concepts, Inc. v. ConvaTec Inc.*, 268 F.R.D. 226, 249 (M.D.N.C. 2010)).

Here, Solairus submitted no affidavit or evidentiary proof to demonstrate undue burden. Instead, Solairus relies on conjecture regarding the volume of documents sought and the purportedly sensitive nature of the information contained therein.

***First***, Solairus cannot avoid its production obligations with unsupported arguments regarding the breadth of the materials requested—a concern SmartSky has already worked to resolve. The narrowed list of search terms, custodians, and discrete document categories proposed by SmartSky reduced the scope of any production from 275,000 to 12,000 documents—i.e. 95%. (*See supra* Part II). Notably, Solairus never requested that SmartSky further reduce the volume, nor has it claimed that reviewing 12,000 documents is unduly burdensome.

Indeed, even without additional meet-and-confer efforts to work with Solairus (*see supra* Part III.A), such volume is patently reasonable for this highly complex litigation involving antitrust, Lanham Act, unfair competition, and other violations. *See N.L.R.B. v. Carolina Food Processors, Inc.*, 81 F.3d 507, 513 (4th Cir. 1996) ("[A] subpoena is not unduly burdensome merely because it requires the production of a large number of documents…."); *Westchester Surplus Lines Ins. Co. v. Portofino Masters Homeowners Assoc., Inc.*, 345 F.R.D. 532, 538 (N.D. Fla. 2024) (holding affidavit objecting to subpoena that sought "hundreds of thousands" of documents was "too conclusory" to establish undue burden because no supporting details); *Ohio Valley Env't Coal., Inc. v. U.S. Army Corps of Eng'rs*, 2012 WL 112325, at *3 (N.D.W.Va. Jan. 12, 2012) (denying motion to quash based on contentions that documents "are voluminous and cumbersome and significant difficulty and expense will be involved in producing them," because "[s]ubpoenas of this kind are inevitable in the type of highly complex cases that are now common in the federal courts" (quoting 9A Fed. Prac. & Proc. Civ. § 2459)).

***Second***, Solairus cannot avoid its production obligations with vague assertions that some documents might be confidential, as it is well-established that "disclosure subject to a confidentiality order, if feasible, is generally preferable to an outright denial of discovery." *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 192-93 (4th Cir. 2019). Regardless, SmartSky has already informed Solairus that it is not requesting customer identities—the primary confidentiality concern Solairus has raised. (*See* E-mail between counsel dated July 23, 2025, attached as **Exhibit B** ("We are not seeking the identities of individual customers.")). That is grounds alone to reject Solairus's argument that client confidentiality somehow warrants quashing the subpoena.

Solairus fares no better arguing the subpoena should be quashed because it could implicate trade secrets and other sensitive information. Courts routinely hold that protective orders are sufficient to safeguard third-party interests in the confidentiality of trade secrets or other competitively sensitive information. *E.g.*, *BLST Northstar, LLC v. Atalaya Captial Mgmt. LP*, 2024 WL 2279195, at *7 (S.D.N.Y. Mar. 12, 2024) (third party's "confidentiality concerns" could "be addressed…by the Protective Order already in place…and restriction of the material to outside counsel eyes only"); *In re Subpoena Duces Tecum Served on Bell Comm'cns Research, Inc.*, 1997 WL 10919, at *3 (S.D.N.Y. Jan. 13, 1997) (similar).

This case should be no different. Indeed, SmartSky has designated every document received from a third party in this litigation as "Confidential" under the Court's Standing Protective Order before producing it to Gogo, and SmartSky will do the same for Solairus's documents. Moreover, SmartSky and Gogo have submitted competing versions of a modified protective order, and both allow Solairus to designate documents as "HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY" before production. (Doc. 54-1;

10

Doc. 51-1). Solairus will enjoy this additional layer of protection no matter which version is entered, and that protection squarely addresses any confidentiality concerns Solairus might have. Until the Court selects which version to enter, SmartSky will even agree to apply that heightened confidentiality designation to any document Solairus requests.

## IV. CONCLUSION

For these reasons, Solairus's Motion to Quash should be denied.

October 30, 2025.

**BURR & FORMAN LLP**

*/s/ G. Wade Leach, III*
Lance A. Lawson, P.E. (NC Bar No. 23835)
G. Wade Leach, III (NC Bar No. 54895)
Mason P. Veal (NC Bar No. 62110)
Matthew H. Ellis (NC Bar No. 56788)
Brandon L. Boykin (NC Bar No. 52038)
101 South Tryon Street, Suite 2610
Charlotte, NC 28280
T: (704) 347-1170
F: (704) 347-4467
E-mail: llawson@burr.com
E-mail: wleach@burr.com
E-mail: mveal@burr.com
E-mail: mellis@burr.com
E-mail: bboykin@burr.com

-AND-

Rik S. Tozzi (*admitted PHV*)
Robert Rutherford (*admitted PHV*)
Gerald P. Gillepsy (*admitted PHV*)
John Wilson Booth (*admitted PHV*)
BURR AND FORMAN LLP
420 North 20th Street, Suite 3400
Birmingham, AL 35203
T: (205) 251-3000
F: (205) 458-5100
E-mail: rtozzi@burr.com
E-mail: rrutherford@burr.com
E-mail: ggillespy@burr.com

11

E-mail: jwbooth@burr.com

Attorneys for Plaintiff
SMARTSKY NETWORKS, LLC

## WORD COUNT CERTIFICATION

I hereby certify that the foregoing document does not exceed 3,000 words according to the word count feature in Microsoft Word and is therefore in compliance with the word limitation set forth in the Court's Case Management Order.

Dated this 30th day of October, 2025.

                                                  */s/ G. Wade Leach, III*

## ARTIFICIAL INTELLIGENCE (AI) CERTIFICATION

I hereby certify the following:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This 30th day of October, 2025.

                                                 /s/ G. Wade Leach, III

14

Case 3:24-cv-01087-MEO-DCK    Document 87    Filed 10/30/25    Page 14 of 16

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was electronically filed using the Court's CM/ECF system, which will automatically send notice of filing to all parties of record as follows:

Lee M. Whitman
D. Scott Hazelgrove, II
WYRICK ROBBINS YATES & PONTON LLP
4101 Lake Boone Trail, Suite 300
Raleigh, North Carolina 27607

Keith H. Forst (*pro hac vice*)
Michael Bonanno (*pro hac vice*)
Aseem Chipalkatti (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, DC 20005

Adam Kinkley (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
Phone: (206) 905-7005
Email: adamkinkley@quinnemanuel.com

Jack A Simms, Jr. (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
300 West 6th St. Suite 2010
Austin, TX 78701
Phone: (737) 667-6106
Email: jacksimms@quinnemanuel.com

Scott L. Watson (*pro hac vice*)
Valerie Lozano (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017

*Attorneys for Defendants Gogo Inc.,*
*Gogo Business Aviation, LLC and*
*Gogo Intermediate Holdings LLC*

Chelsea K. Barnes
NELSON MULLINS RILEY & SCARBOROUGH LLP
380 Knollwood Street, Suite 530
Winston-Salem, NC 27103
Telephone: 336.774.3397
Fax: 336.774.3299
E-mail: chelsea.barnes@nelsonmullins.com
*Counsel for Non-Party Solairus Aviation, LLC*

This 30th day of October, 2025.

                                           */s/ G. Wade Leach, III*