# Exhibit A



Rik Tozzi
rtozzi@burr.com
Direct Dial: (205) 458-5152
Direct Fax: (205) 278-6948

Burr & Forman LLP
420 North 20th Street
Suite 3400
Birmingham, AL  35203

*Office*  (205) 251-3000
*Fax*  (205) 458-5100

BURR.COM

June 27, 2025

Solairus Aviation LLC
c/o its Registered Agent CT Corporation System
330 N Brand Blvd, Suite 700
Glendale, CA 91206

**Re:    SmartSky Networks, LLC v. Gogo Business Aviation LLC et al., Case No. 3:24-cv-01087-FDW-DCK (W.D.N.C.)**

To Whom it May Concern:

Enclosed for service upon you please find a copy of a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (the "Subpoena") in the above-captioned lawsuit, currently pending before the United States District Court for the Western District of North Carolina.

Please take notice that you are required to produce the items requested in Exhibit A to the Subpoena **by or before July 18, 2025 at 12:00 p.m. EDT**. If you need additional time to gather and produce responsive documents by this time, please let us know and we will work with you to accommodate a reasonable production schedule.

Should you have any questions pertaining to the scope of the Subpoena that are not addressed by the "Definitions" or "Instructions" of Exhibit A to the Subpoena, please do not hesitate to reach out to contact our firm. You may do so by contacting John Wilson Booth at (205) 458-5160 or jwbooth@burr.com; or Wade Leach at (704) 347-6421 or wleach@burr.com.

We look forward to receiving your timely response.

Very truly yours,

*/s/ Rik S. Tozzi*

Rik Tozzi

RST

**AL • DC • DE • FL • GA • IL • MS • NC • SC • TN**

# UNITED STATES DISTRICT COURT
for the

Western District of North Carolina

| | |
|---|---|
| SmartSky Networks, LLC | ) |
| *Plaintiff* | ) |
| v. | ) |
| Gogo Inc., Gogo Business Aviation LLC, and Gogo Intermediate Holdings LLC | ) |
| *Defendant* | ) |

Civil Action No.  3:24-CV-01087-FDW-DCK

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Solairus Aviation LLC, c/o its Registered Agent CT Corporation System, 330 N Brand Blvd, Suite 700, Glendale, CA 91206

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Exhibit A

| Place: Electronically to the following email addresses: wleach@burr.com; jwbooth@burr.com; mveal@burr.com | Date and Time: 07/18/2025 12:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  06/27/2025

| CLERK OF COURT | | |
|---|---|---|
| | OR | /s/ G. Wade Leach, III |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  SmartSky Networks, LLC , who issues or requests this subpoena, are:

G. Wade Leach, III, Burr & Forman LLP, 101 South Tryon Street, Suite 2610, Charlotte, NC 28280, wleach@burr.com, (704) 347-1170

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No.  3:24-CV-01087-FDW-DCK

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____    on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### CASE NO. 3:24-CV-01087-FDW-DCK

| | | |
|---|---|---|
| SMARTSKY NETWORKS, LLC, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **EXHIBIT A** |
| | ) | |
| GOGO INC.; GOGO BUSINESS AVIATION | ) | |
| LLC; and GOGO INTERMEDIATE HOLDINGS | ) | |
| LLC, | ) | |
| | ) | |
| **Defendants.** | ) | |

Pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure, you have been subpoenaed to "produce and permit inspection, copying, testing, or sampling of designated books, documents, electronically stored information, or tangible things in [your] possession, custody, or control."

## DEFINITIONS

1.     "You," or "Your," means the person or entity to whom this subpoena is directed, its present and former officers, directors, employees, agents, representatives, attorneys, consultants and all other persons authorized to act or acting on its behalf for any purpose whatsoever, and all predecessors, successors, parent companies, affiliates, subsidiaries, partnerships, joint ventures or initiatives, divisions, business units, and offices.

2.     "SmartSky" means SmartSky Networks, LLC, its present and former officers, directors, employees, agents, representatives, attorneys, consultants and all other persons authorized to act or acting on its behalf for any purpose whatsoever, and all predecessors, successors, direct parents, affiliates, subsidiaries, partnerships, joint ventures or initiatives, divisions, business units, and offices.

3.      "Gogo" means Gogo Inc., Gogo Business Aviation LLC, and Gogo Intermediate Holdings LLC, their present and former officers, directors, employees, agents, representatives, attorneys, consultants and all other persons authorized to act or acting on its behalf for any purpose whatsoever, and all predecessors, successors, direct parents, affiliates, subsidiaries, partnerships, joint ventures or initiatives, divisions, business units, and offices.

4.      "Complaint" shall refer to the Complaint filed in the lawsuit styled *SmartSky Networks, LLC v. Gogo Inc., Gogo Business Aviation LLC, and Gogo Intermediate Holdings LLC*, Case No. 3:24-cv-01087 (United States District Court for the Western District of North Carolina).

5.      "ATG" means air-to-ground.

6.      "IFC" means in-flight connectivity.

7.      "OEM," "aircraft manufacturer," and "jet manufacturer" shall refer to the entities that manufacture business aviation aircraft, including without limitation Airbus Corporate Jets, Boeing Business Jets, Bombardier, Gulfstream Aerospace, Dassault Aviation, Textron Aviation, Embraer, HondaJet, or any other entity in the business of manufacturing business aviation aircraft.

8.      "MROs" means any FAA-certified facility that installs ATG systems or acts as an authorized dealer for ATG systems, including without limitation Duncan Aviation, Embraer, StandardAero, Textron Aviation, West Star Aviation, AMI Aviation, Araina Aviation, Banyan Air Service, Bombardier Service Center, Dassault Falcon Jet, Elliott Aviation, GEF Aviation, Inc., Gulfstream Aerospace, Pro Star Aviation, Skyservice, Trimec Aviation, and any other FAA-certified facility that install ATG systems and acts as authorized dealers for ATG systems.

9.      "Fleet Operators" means any private jet charterer, fractional jet ownership company, or any person or entity that owns or otherwise operates more than one business aviation

aircraft, including without limitation any of the following companies, their predecessors, successors, parent companies, affiliates, subsidiaries, partnerships, joint ventures or initiatives, divisions, business units, and offices:

1. Acropolis Aviation;
2. Air Partner;
3. AirProxima;
4. AirShare;
5. AirSprint;
6. Alpha Star Aviation Services;
7. Arabasco;
8. Aviation Link Company;
9. Bahrain Royal Flight;
10. Breeze;
11. Citadel;
12. Clay Lacy;
13. Coca Cola Consolidated;
14. Constant Aviation;
15. Craft Charter;
16. Current;
17. Davinci Jets;
18. Deet Jet;
19. Delta Private Jets;
20. Dubai Air Wing/Royal Flight;
21. Dumont Jet;
22. Encompass Health;
23. Encore Jets;
24. ExpertJet;
25. Federal Express;
26. Fertitta;
27. Flexjet/Flight Options;
28. flyExclusive;
29. FlyHouse Aviation;
30. FlyUSA;
31. GainJet Aviation;
32. GAMA Aviation;
33. Global Jet;
34. GlobeAir;
35. GMJ;
36. Hendrick Motorsports;
37. Hera Flight;
38. HongKong Jet;
39. Jet Aviation;
40. Jet Edge;

3

41. Jet It;
42. Jet Linx;
43. JetMagic;
44. Jets.com;
45. JetSet Group;
46. JetSmarter;
47. Jordache;
48. Journey Aviation;
49. JSX;
50. K5 Aviation;
51. Kalair;
52. L3 Aviation;
53. Lowes;
54. Lufthansa Bombardier Aviation Services;
55. Lufthansa Technik;
56. Lexaviation;
57. Magellan Jets;
58. Maleth-Aero;
59. Mid East Jet;
60. MGM Aviation;
61. MJET;
62. Naples Jet;
63. National Air Services (NAS);
64. Netflix;
65. NetJets/EJM;
66. Nicholas Air;
67. Northern Jet Management;
68. PlaneSense;
69. Presidential Flight (UAE);
70. Prime Jet;
71. PrivatAir;
72. Private Jet Services Group;
73. Privatefly;
74. Prive Jets;
75. ProspAir Jet Charter;
76. Qatar Amiri Flight;
77. Quicken Loans;
78. Royal Flight of Oman;
79. Royal Jet;
80. Ruler's Flight Sharjah;
81. Saudi Royal Flight;
82. SaxonAir;
83. Sentient Jet;
84. Sierra Nevada;
85. Silverhawk Aviation;
86. Sky Prime Aviation Services;

4

87. SkyWest;
88. Solairus Aviation;
89. Star Jets International;
90. Strata Jet;
91. Summit Aviation;
92. Surf Air;
93. TAG Aviation;
94. TMC Jets;
95. UPS;
96. US Government (various agencies);
97. Volato;
98. Trident Aviation;
99. West Coast Aviation Services;
100. Wheels Up;
101. White Jet;
102. Wholesale Jet Club;
103. Worldwide Aircraft Holding;
104. XOJET/Vista Jet; or
105. Any other business involved in the ownership or operation of multiple business aviation aircraft.

10. "Person" means natural persons and individuals, and all legal entities, publicly or privately held, including without limitation, corporations, partnerships, limited liability companies, joint ventures, associations, non-profit and for-profit organizations, governments and public agencies and departments.

11. "Document" or "documents" as used herein shall mean original and every non-identical copy of any original of all mechanically written, handwritten, typed or printed material, electronically-stored data, sound recordings, films, photographs, slides, and other physical objects of every kind and description, including but not limited to, all transcripts, board minutes, letters, notes, memoranda, tapes, records, telegrams, periodicals, pamphlets, brochures, circulars, advertisements, leaflets, reports, research studies, test data, working papers, drawings, sketches, diagrams, graphs, charts, diaries, logs, agreements, contracts, rough drafts, analyses, ledgers, inventories, financial information, books of account, understandings, minutes of meetings, minute books, resolutions, assignments, computer printouts, purchase orders, invoice, bills of lading,

5

written memoranda or notes of oral communication, reports, laboratory or engineering notebooks, blueprints, drawings, operator manuals, software manuals, advertising information, consumer letters and complaints, trade journals, magazines, technical manuals, archive records expired or "dead" files electronically stored or recorded files, electronically-stored data such as documents stored on network drives, hard drives, CD, DVD, electronic mail files, both current and deleted, and any other tangible thing of whatever nature. Documents also include any documents in any internet cloud, dropbox, or Dropbox. Documents also include text messages from cell phone or other electronic devices. "Documents" also include "Electronically Stored Information," or "ESI." "ESI" includes text messages, SMS messages, messenger services on social media platforms (like Facebook, Twitter, Instagram, LinkedIn, etc.), "Meta-Data," "Native Files," and "Static Images." "Meta Data" means: (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted or otherwise manipulated by a user of such system. Meta-Data is a subset of ESI. "Native File(s)" means ESI in the electronic format of the application in which such ESI is normally created, viewed and/or modified. Native Files are a subset of ESI. "Static Image(s)" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard computer systems. In the absence of agreement of the parties or order of Court, a Static Image should be provided in either Tagged Image File Format (TIFF, or .TIF files) or Portable Document Format (PDF). If load files were created in the process of converting Native Files to Static Images, or if load files may be created without undue burden or cost, load files should be produces together with Static Images. ESI should be produced in its native format. If the

parties have agreed to a format in which ESI is to be produced, please produce ESI in accordance with the agreed upon format. This term shall also include any non-privileged communications, whether internal or external with any third-party, including all internal and external e-mails.

12.     "Communication" means any transmission, transfer, or exchange of information orally, in writing, or by any other means between two or more persons, in the form of facts, ideas, inquiries, or otherwise.

13.     "Identify" when used in reference to any document, shall mean: (a) describe the type of document (e.g., letter, contract, memorandum, telegram); (b) provide its date; (c) provide its title, if any; (d) provide the number of pages; (e) describe its general subject matter and contents; (f) identify its author or originator; (g) provide the name of each person for whom it was prepared; (h) provide the name of each person to whom it was delivered and by whom it was received; (i) identify its present location; and (j) identify its present custodian.

14.     "Identify" when used in reference to any tangible object shall include the identity of the owner, as well as make and model of the object.

15.     "Relating to" and "Relate to" means directly or indirectly bearing upon or touching on, and therefore also means "concerning," "pertaining to," "referring to," "regarding," "dealing with," "connected with," and "evidencing."

16.     "Price" and "Pricing" mean actual, proposed, or recommended monetary values or rates; cost downs, increases or decreases in price; retail, wholesale, transfer, or exchange prices; markups, discounts, rebates, concessions, residual valuations, promotions or promotional allowances; competitive equalization (CE) or price assistance (PA); financing, warranty, policy, or other related costs or charges; or any other programs or offers that can result in a price decrease or another thing of value being provided.

## <u>INSTRUCTIONS</u>

1.      These document requests require the searching and production of both internal (i.e., e-mails between your employees, agents, or anyone else acting on your behalf) and external (i.e., between you and any third-party) e-mails.  To the extent you have any questions regarding the scope of these requests, please contact the undersigned counsel.

2.      Unless otherwise indicated, each of these requests seeks Documents Relating to Gogo, Relating to SmartSky, and Relating to the ATG IFC market in the United States for the period beginning January 1, 2014 and extending through the present, including any Documents dated, generated, referring to, sent, or received during that period.

3.      To the extent responsive Documents are maintained electronically, including, without limitation, Documents stored in personal computers, portable computers, workstations, minicomputers, mainframes, servers, backup disks and tapes, archive disks and tapes, and other forms of offline storage, whether maintained on or off Your premises, produce these Documents in the electronic, machine-readable form, in which they ordinarily are retained and in a manner that maintains the integrity of metadata, together with data dictionaries, lookup tables or other instructive materials necessary to read, display, and interpret the Documents.

4.      Documents in Your possession, custody or control include, without limitation, information in headquarters buildings; corporate, divisional, regional, field marketing and sales, or other offices; plants, engineering and production facilities; on-and-off site record retention, data, and electronic backup facilities; and homes or any other location in which Documents are stored by You, whether attorneys, consultants, or other authorized Persons.

5.     If any portion of a Document is responsive, produce for inspection the entire document, including any attachments and exhibits thereto. Also produce all folder or file jackets and covers in which responsive Documents are contained, including any labels thereon.

6.     If You do not have in Your possession, custody or control Documents responsive to all or part of a request herein, please so state in the response to that request and identify any category or sub-category of requested Document not in Your possession, custody or control.

7.     If you are aware that a document or group of documents once existed, but has been destroyed, concealed, or lost, you shall state when the document or group of documents was destroyed or lost, who destroyed or lost it, why it was destroyed or lost, and the circumstances under which it was destroyed or lost.

8.     For each responsive Document withheld from inspection and copying on the basis of an asserted privilege or other protection, provide a log to counsel for SmartSky containing information sufficient to meet the requirements of Fed. R. Civ. P. 45(d)(2). Log attachments claimed to be privileged or otherwise protected separately from the Document to which it is attached. For each logged Document, produce for inspection that portion(s) of the Document (including attachments and exhibits thereto) that is not claimed to be privileged or otherwise protected from inspection, with the redacted portion(s) of the Document identified with a redaction label.

9.     If You decline to produce for inspection Documents requested herein on the basis of an objection (other than privilege), identify the specific category or sub-category of Documents being withheld and explicitly state the reason for the objection. Thus, for example, instead of objecting by stating only that production would be "unduly burdensome" or that the information

"And" and "or" shall be read in the conjunctive or disjunctive in a manner to provide the broadest scope of an interrogatory.

10.     If You decline to produce for inspection Documents requested herein on the basis of an objection (other than privilege), identify the specific category or sub-category of Documents being withheld and explicitly state the reason for the objection. Thus, for example, instead of objecting by stating only that production would be "unduly burdensome" or that the information is not reasonably accessible, please explain why the production would cause the claimed burden or the information is not reasonably accessible. Similarly, and by further example, if You consider a request to be "overly broad," or "unduly costly" please explain why You believe it to be so.

11.     If any of the definitions, instructions, or requests herein are objected to as vague or ambiguous, identify the language You believe causes the vagueness or ambiguity and state how You have interpreted the contested language in formulating Your response(s) and Document production.

12.     "And" and "or" shall be read in the conjunctive or disjunctive in a manner to provide the broadest scope of a request.

13.     Words of gender shall be construed as including all genders, without limitation.

14.     Words in the singular shall be construed to mean the plural and vice versa as appropriate.

15.     Your production of Documents shall be covered by the Protective Order entered by the Court in this litigation.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.      All documents and communications, including all internal and external documents and communications and all documents and communications between You and Gogo, relating to any of Gogo's ATG products, services, or networks.

2.      All documents and communications, including all internal and external documents and communications and all documents and communications between You and Gogo, relating to SmartSky or to any of SmartSky's ATG products, services, or networks.

3.      All contracts, agreements, deals, negotiations, discounts, rebates, subsidies, incentives, promotional deals, dealer agreements, purchase agreements, service agreements, pricing information, or other agreement between You and Gogo since January 1, 2014.

4.      All documents and communications referring to Gogo as a "monopoly" or "monopolist," or competing in a "duopoly" or two-competitor market, or otherwise discussing Gogo's market power or market share in the business aviation ATG market.

5.      Documents and communications sufficient to identify each aircraft you own or have owned that contains or has contained Gogo equipment since January 1, 2014.

6.      Documents and communications sufficient to identify each aircraft on which you have installed Gogo equipment or had Gogo equipment installed onto since January 1, 2014.

7.      Documents and communications sufficient to identify each aircraft you own or have owned that contains or has contained SmartSky equipment since January 1, 2014.

8.      Documents and communications sufficient to identify each aircraft on which you have installed SmartSky equipment or had SmartSky equipment installed onto since January 1, 2014.

9.     All documents and communications that relate to actual or expected customer demand for broadband business aviation ATG products or services between January 1, 2014 and today, including forecasts and projections.

10.    All documents and communications that relate to actual or expected demand for any of Gogo's ATG products or services between January 1, 2014 and today, including forecasts and projections.

11.    All documents and communications that relate to actual or expected demand for any of SmartSky's ATG products or services between January 1, 2014 and today, including forecasts and projections.

12.    All documents and communications that relate to pricing or price information for any of Gogo's ATG products or services from January 1, 2014 through the present.

13.    All documents and communications that relate to pricing or price information for any of SmartSky's ATG products or services from January 1, 2014 through the present

14.    From January 1, 2014 until today, all documents and communications relating to, addressing, or discussing:

    A.      The quality of Gogo's ATG products or services,

    B.      Expectations regarding the technical or end-user (e.g., the functions or applications that an end-user can perform) capabilities of Gogo's ATG products or services,

    C.      The actual performance of Gogo's ATG products or services,

    D.      The quality of SmartSky's ATG products or services,

    E.      Expectations regarding the technical or end-user capabilities of SmartSky's ATG products or services,

    F.      The actual performance of SmartSky's ATG products or services,

G.        The quality of other IFC products or services,

H.        Comparisons between Gogo's ATG systems and forthcoming ATG systems and other products/services, including comparisons regarding consistency, bandwidth, latency, download and upload speed, and price.

15.      All documents and communications showing any analysis, study, white paper, or other evaluation of any of Gogo's ATG products or services since January 1, 2014.

16.      All documents and communications showing any analysis, study, white paper, or other evaluation of any of SmartSky's ATG products or services since January 1, 2014.

17.      All reviews, statements, comments, compliments, criticisms, or other documents or communications with any third-party of any of Gogo's ATG products or services since January 1, 2014.

18.      All documents and communications relating to representations by Gogo of the date(s) that any of its ATG products (including Gogo 5G) would be available, delays in the development or availability of any of Gogo's ATG products, or any reliance by You on Gogo's representations about the availability or forthcoming availability of any of its ATG products or services.

19.      All documents and communications relating to representations by SmartSky of the date(s) that any of its ATG products would be available, delays in the development or availability of any of SmartSky's ATG products, or any reliance by You on SmartSky's representations about the availability or forthcoming availability of any of its ATG products or services.

20.      All reviews, statements, comments, compliments, criticisms, or other documents or communications with any third-party of any of SmartSky's ATG products or services since January 1, 2014.

21.      All documents and communications related to meetings, trips, retreats, Gogo Dealer Council meetings, or other gatherings with Gogo, whether in-person or virtual, including

13

without limitation at conferences such as NBAA BACE, regional events, or AEA, since January 1, 2014.

22. All documents and communications between You and any other OEM, MRO, or Fleet Operator regarding Gogo or any of Gogo's products or services, including communications relating to Gogo's business practices, Gogo's product offerings, or any contracts, agreements, deals, negotiations, discounts, rebates, subsidies, incentives, promotional deals, dealer agreements, purchase agreements, service agreements, or pricing information with respect to Gogo since January 1, 2014.

23. All documents and communications between You and any other OEM, MRO, or Fleet Operator regarding SmartSky or any of SmartSky's products or services, including communications concerning SmartSky's business practices, ability to raise capital, fundraising concerns, ability to remain operational in the long-term, or any related topic, since January 1, 2014.

24. All documents reflecting internal communications, communications with Gogo, or communications with any third party about the 3G, 4G, 4G LTE, or 5G wireless communications standards in relation to any products or services offered by Gogo, including any references to Gogo NextGen, Gogo Biz 4G, or Gogo 5G, since January 1, 2014.

25. All documents and communications pertaining to Your marketing or sales efforts with respect to Gogo's products or services, including business plans, strategies, meeting notes, presentations, or similar documents, since January 1, 2014.

26. All documents and communications pertaining to Your marketing or sales efforts with respect to SmartSky's products or services, including business plans, strategies, meeting notes, presentations, or similar documents, since January 1, 2014.

27.     All documents and communications relating to any efforts made by You to develop, achieve, evaluate, analyze, or obtain any type certificate, supplemental type certificate ("STC"), or other certification for any aircraft, for any Gogo ATG product or equipment since January 1, 2014.

28.     All documents and communications relating to any efforts made by You to develop, achieve, evaluate, analyze, or obtain any type certificate, supplemental type certificate ("STC"), or other certification for any aircraft, for any SmartSky ATG product or equipment since January 1, 2014

29.     Documents and communications sufficient to show the frequency and number of meetings between any of Your representatives and representatives of Gogo with respect to the sale, marketing, distribution, advertisement, promotion, or use of Gogo's products or services.

30.     Documents and communications relating to Your or Your customers' understanding of "4G" and "5G" technological standards, Your or Your customers' expectations with respect to "Gogo Biz 4G" or "Gogo 5G," including any survey, review, comments, analyses, white paper, studies, or other related documents.

31.     Any and all documents and communications between You and Gogo wherein You were requested, asked, discouraged, chastised, incentivized, urged, or otherwise persuaded or attempted to persuade against doing or expanding business with SmartSky.

32.     Any and all documents or communications between You and any third party wherein You were requested, asked, encouraged, incentivized, urged, or otherwise persuaded against doing or expanding business with SmartSky.

33.     All documents and communications showing or evidencing any contract, agreement, understanding, negotiation, or similar arrangement with Gogo which resulted or would

have resulted in You selling or installing Gogo's ATG products to the exclusion of You selling or installing the products, equipment, or service of any other ATG provider, including any agreement that either (a) requires You to limit the scope or intensity of Your effort to buy, sell, install, or certify the product or services of SmartSky or any other person; or (b) has the purpose or effect of encouraging You to limit the scope or intensity of its effort to buy, sell, install, or certify the product or services of any other person, including any volume or long-term contract discounts with Gogo.